**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
DEC 09 2025
ARTHUR JOHNSTON
BY DEPUTY

**PENISHA MCCULLOM, Individually and as Personal Representative on Behalf of the Wrongful Death Beneficiaries of CLEVELAND ALLISON** **PLAINTIFF**

**V.** **CIVIL ACTION NO.** 3:25-cv-951-DPJ-ASH

**HINDS COUNTY, MISSISSIPPI, QCHC INC., QCHC OF MISSISSIPPI, LLC, and JOHN AND JANE DOES 1 – 100** **DEFENDANTS**

## PLAINTIFF'S FIRST COMPLAINT

***Jury Trial Demanded***

1. This Complaint is brought by Penisha McCullom (hereinafter, "Plaintiff"), Individually and as Personal Representative on behalf of the wrongful death beneficiaries of Cleveland Allison, (hereinafter, "Decedent"), by and through undersigned counsel, against Hinds County, Mississippi, QCHC Inc., QCHC of Mississippi, LLC, and John and Jane Does 1-100, (hereinafter, "Defendants".)

## JURISDICTION AND VENUE

2. Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. § 1983 as well as the 8th and 14th Amendments to the United States Constitution. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1331 and 1343. The Court also has pendent jurisdiction over the Plaintiff's State causes of action.

3. Venue is appropriate in this Court under § 1391(b) as all acts and/or omissions occurred in Hinds County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

## PARTIES

4. Plaintiff, Penisha McCullom, is an adult resident citizen of Hinds County, Mississippi. Plaintiff brings this action individually and on behalf of the surviving heirs/wrongful death beneficiaries of Decedent.[1]

5. Decedent was, at all times material to this Complaint, an adult incarcerated at the Hinds County Detention Center (hereinafter, "HCDC"). Substantial acts, omissions, and events that caused the Decedent's death took place in Hinds County, Mississippi. At the time of the incident which gives rise to this Complaint, Decedent was a 30-year-old citizen of the State of Mississippi and a pre-trial detainee incarcerated at HCDC. Plaintiff, as Personal Representative, brings this action pursuant to Mississippi Code Ann. § 11-7-13 (1972), the Wrongful Death Statute.

6. Defendant, Hinds County, Mississippi, is located within the Southern District of the United States District Court, Northern Division. Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the HCDC. Hinds County has the responsibility for providing humane care and treatment consistent with all constitutional and American Correctional Association standards. Defendant is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as the Clerk of the Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Hinds County, Mississippi 39201. Hinds County officials and policymakers knew that the HCDC was understaffed with untrained officers as early as August 2013 when Dr. James

---

[1] An heirship determination is pending. Plaintiff will amend this Complaint to allege the true names and addresses of the surviving heirs and wrongful death beneficiaries of the Decedent at a later time.

Austin conducted his inspection of the jail. Throughout the following years, numerous teams of independent experts have continued to note the jail is not adequately staffed, that the jailers are not properly trained, and that the inmates do not have adequate access to medical care.

7. Tyree Jones was the Sheriff of Hinds County, Mississippi at the time of the Decedent's death. Sheriff Jones was responsible for the administration of the HCDC, and had the duty to hire, supervise, train and discipline the staff at the facility, as well as ensuring the facility's compliance with ACA standards and the laws and Constitutions of Mississippi and the United States. His duties also included reviewing, investigating, and responding to prisoner grievances and complaints, and as an employee of the Defendant, he was considered as a final policymaker for the Hinds County Detention Center at the time of the incident described in this Complaint.

8. Defendant, QCHC Inc. and QCHC of Mississippi, LLC, (hereinafter, "QCHC"), a for-profit private medical company incorporated and existing in the state of Alabama, was under contract with Hinds County, Mississippi, to provide the inmates housed with the HCDC with on-site medical care through and until June 30, 2024. Under its contract with Hinds County, QCHC has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. QCHC's principal place of business is located at 200 Narrows Parkway, Suite A, Birmingham, Alabama 35242, and is subject to in personam jurisdiction of this Court by service of process upon its registered agent, Incorp Services, Inc., at 302 Enterprise Drive, Suite A, Oxford, Mississippi 38655.

9. Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and or servants of the Hinds County Sheriff's Department and/or QCHC. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Decedent's damages, as alleged herein, were proximately

caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendant Hinds County and QCHC herein, and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## FACTS

10. On or about, April 13, 2024, the Decedent was arrested and held at the Hinds County Detention Center.

11. On or about April 15, 2024, the Decedent/pretrial detainee suffered a heart attack and was admitted to Merit Health where he underwent surgery for a stent placement, and several medications were thereafter prescribed.

12. On April 15, 2024, Defendant Hinds County communicated through several employees the seriousness of Decedent's health care needs and the necessity for immediate release from detainment so that Decedent's family could deal with his health care needs without the county's participation. See correspondence attached hereto as Exhibit "A".

13. On or about April 17, 2024, the Decedent was transported back to HCDC and was placed under medical observation with requirements to be assessed every four (4) hours with a complete set of vital signs to be documented at a minimum of every eight (8) hours.

14. At all times relevant Defendant Hinds County had a contractual agreement with QCHC to provide professional and responsive physician and related healthcare services to the HCDC detainees.

15. At all times relevant, Defendants Hinds County and QCHC failed to adequately and timely respond to Decedent's health issues and failed to properly monitor Decedent's health issues.

16. Defendants Hinds County and QCHC failed to adhere to the requirements to assess the Decedent every four (4) hours and document complete vital signs at a minimum of every eight

(8) hours.

17. Decedent had a number of medications that were prescribed, both daily and twice daily.

18. Defendants Hinds County and QCHC failed to administer the prescription medication as prescribed.

19. Decedent had one medication that required his vitals to be checked prior to being given the medication.

20. Defendants Hinds County and QCHC failed to check Decedent's vitals prior to administering said medication.

21. Decedent had a number of follow up visits that were scheduled with his cardiologist.

22. Defendants Hinds County and QCHC failed to follow the cardiologist's orders and failed to make Decedent available for those follow up appointments.

23. On May 12, 2024, Defendants Hinds County and QCHC failed to administer Decedent his prescribed medication due to security issues.

24. On June 08, 2024, Defendants Hinds County and QCHC failed to administer Decedent his prescribed medication due to a lack of Nursing Staff.

25. Upon information and belief, on June 09, 2024, Defendant Hinds County required Decedent to work in the kitchen area of HCDC, which had previously caused breathing and heart issues for the Decedent on at least one occasion, causing Decedent to vomit.

26. On June 9, 2024, Decedent entered the medical unit with chest pains and died of cardiac failure.

**1983 CAUSES OF ACTION:**
**FOURTEENTH AMENDMENT VIOLATIONS:**
**PROTECTION FROM HARM AND DANGEROUS CONDITIONS OF CONFINEMENT[1]**

27. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 26 hereinabove. Hinds County, acting by and through its elected and appointed officials and QCHC acted with deliberate indifference in the allegations listed above. The Plaintiff incorporates herein *United States v. Hinds County*, et. al. United States District Court, Southern District of Mississippi, Civil Action No. 3:16cv489 discussing the condition of HCDC and that these conditions have causes and/or contributed to the Decedent's death.

28. As shown in the monitoring reports and filings in *United States v. Hinds County*, et. al., Hinds County maintained and operated HCDC in such a manner that the conditions of confinement resulted in a comprehensive and pervasive pattern of serious deficiencies in providing for the basic human needs of the inmates and pretrial detainees detained in HCDC in every aspect.

29. As shown in the monitoring reports and filings in *United States v. Hinds County*, et. al., the conditions of confinement also included a jail that was deficient in so many respects that it was not suitable for human confinement. These conditions resulted in the infliction of punishment on all of the inmates and pretrial detainees who were forced to live there, including Decedent for the last days of his life. Such conditions violated Decedent's due process rights, in violation of the Fourteenth Amendment to the United States Constitution.

30. As shown in the monitoring reports and filings in *United States v. Hinds County*, et. al., the conditions of confinement also included many policies, practices, and customs that deprived most, if not all, inmates, including Decedent, of their right to reasonable, adequate, and timely medical care, and their right not to be punished during their pretrial confinement. These

[1] Plaintiff provided QCHC a Notice of Claim pursuant to Mississippi Code Ann. §15-1-36 (1972) more than 60 days prior to filing this Complaint.

included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Tyree Jones in his position as the final policymaker of the HCDC. They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

31. Defendants Hinds County, QCHC, and Doe Defendants 1-100 in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of the Decedent's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Decedent and other inmates housed at the HCDC. As a result of these policies, the Defendants failed to protect the Decedent and created unconstitutional conditions of confinement.

32. Such unwritten policies, customs and practices include, but are not limited to the following:

A. inadequate and improper training, supervision and discipline of corrections officers;

B. inadequate and improper procedures, policies and practices for investigating improper activities by officers either through offender complaints of misconduct or through internally-initiated complaints or investigations.

C. inadequate or improper procedures, policies and practices for identifying and taking appropriate action against officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights.

D. failure to properly classify inmates;

E. the chronic understaffing at the jail and hiring jailers with little to no training or supervision, including security staff support for the provision of medical

health services.[2]

F. Failing to conduct safety, well-being, and health assessment checks.

G. Failure to provide constitutionally adequate medical health treatment for inmates, specifically Cleveland Allison.

33. Said conditions of confinement also included many policies, practices and customs that deprived most, if not all, inmates, including Decedent, of their right to reasonable, adequate and timely medical care. Some of the policies, customs and practices which constituted said elements included, but were not limited to:

A) Regularly denying, delaying, or interfering with inmate requests for medical care during lockdown;

B) Ignoring, delaying or failing to promptly comply with the treatment orders of the doctors;

C) Refusing to accommodate the disabilities of inmates; and

D) Not promptly providing reasonable medical care and treatment.

34. The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated and pervasive deprivations of the Decedent's right to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments.

35. By exhibiting deliberate indifference to the substantial risk of harm the Decedent faced as a result of Hinds County's policies and practices set forth above, which resulted in failure to protect the Decedent from harm, ultimately resulting in his death, the Defendants, Hinds County, QCHC, and Doe Defendants 1-100, violated the Decedent's right to be free from cruel and unusual punishment under Fourteenth Amendment to the United States Constitution. Each of the foregoing policies, customs and practices were implemented, approved, ratified, known and/or constructively

[2] See *United States v. Hinds County*, et. al., 3:16-cv-00489-CWR-BWR at Dkt. #281 pg. 10.

known by the officials of Hinds County.

36. Each of the foregoing policies, customs and practices constituted elements of the conditions of Decedent's confinement and, both individually and in combination, were moving forces in the deprivation of Decedent's respective rights including his right to reasonable, adequate and timely medical care under the Fourteenth Amendment.

37. Plaintiff seeks recovery of all compensatory damages to which the Estate of Cleveland Allison is entitled as a result of the conditions of Decedent's confinement, and the damages he suffered therefrom. Plaintiff further seeks recovery of punitive damages from Defendant QCHC for its conduct in callous and reckless disregard for the rights, welfare and medical needs of Decedent.

**<u>EPISODIC ACTS OR OMISSIONS</u>**

38. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 38 hereinabove.

39. The Fourteenth Amendment requires the Defendants to provide pretrial detainees with basic human needs, including medical care and protection from harm, during their confinement. The Defendants and their employees had subjective knowledge of the substantial and serious threat to the Decedent's health, yet the Defendants nevertheless disregarded the risk by responding to it with deliberate indifference. The Defendants and their employees clearly breached this duty and as a result, Cleveland Allison died.

40. As demonstrated in in the monitoring reports and filings in *United States v. Hinds County*, et. al., Hinds County maintained and operated a jail in such a manner as to cause the pervasive deprivation of inmates and pretrial detainees' constitutional rights in every respect and at every level. The Decedent was forced to live in this jail and endure the action and inaction of its officials, as well as the jailers and jail staff acting in accordance with jail policies, customs and

practices, under color of law, exhibiting callous and deliberate indifference, in depriving him of his rights guaranteed under the Constitution and laws of the United States.

41. Hinds County, Doe Defendants 1-100, as well as jailers and jail staff acting pursuant to jail policy, practice and customs, created and required inmates and pretrial detainees to live in a jail that was deficient in so many respects that it was not suitable for human confinement. These actions resulted in the infliction of punishment on each of the inmates and pretrial detainees who were forced to live there, including the Decedent for the last days of his life.

42. As shown hereinabove, Hinds County adopted, implemented and permitted many other policies, practices and customs that deprived most, if not all, inmates and pretrial detainees, including Decedent, of their right to reasonable, adequate and timely medical care. These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Jones as final policymaker of the HCDC. They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

43. Some of the policies, customs and practices of the HCDC included, but were not limited to:

A) Regularly denying, delaying or interfering with inmate and pretrial detainee requests for medical care during lockdowns;

B) Regularly denying or delaying all inmate and pretrial detainee requests and doctor's orders for inmate and pretrial detainee medical care through a specialist;

C) Ignoring, delaying or failing to promptly comply with the treatment orders of the jail doctor and/or outside physicians;

D) Refusing to accommodate the disabilities of inmates and pretrial detainees;

E) Refusing to deliver an inmate's or pretrial detainees' medication to that inmate or pretrial detainee; and

F) Refusing to move seriously ill patients to a hospital or other location where they can receive appropriate care, instead leaving them in a jail cell and leaving no one but their cellmates to care for them.

44. The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated, pervasive and persistent deprivations of inmates' and pretrial detainees' rights to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at the HCDC. Decedent suffered numerous deprivations of his right to reasonable, adequate and timely medical care due to the actions of these policymakers, their policies, the jailers, and the jail staff.

45. QCHC employees acted with deliberate indifference and callous and reckless disregard for the rights, welfare and medical needs of and other constitutional rights of Decedent.

46. Jailers and jail staff acted, or failed to act, pursuant to the official policies, customs and practices of Jones and Hinds County, or at the direction of and with the approval of these officials, in depriving Decedent of his rights described herein. The policies, practices and customs were moving forces in the action and inaction for jailers, and jail staff, and these jailers and jail staff acted with deliberate indifference to the rights, welfare and medical needs and other constitutional rights of Decedent.

47. Defendants' failure to properly oversee and manage the Decedent's obvious medical condition, i.e. a condition that directly caused his death. In doing so, Defendants violated clearly established constitutional rights, including but not limited to:

A. Cruel and unusual punishment under the Fourteenth Amendment;

B. Decedent's right not to be deprived of liberty without due process of law;

C. Decedent's right to be safe and protected from injury while in Defendants' custody; and

D. Decedent's right to necessary medical treatment for his very serious medical condition.

48. By Defendants' failure to provide Decedent with the medically necessary care and/or medications required to properly manage his medical condition, Defendants' actions deprived Decedent of the rights secured for him by the United States Constitution under the Fourteenth Amendments and federal law.

49. The deprivation of the Decedent's rights by Defendants, as described herein, directly and proximately caused Decedent to suffer excruciating pain, extraordinary mental and emotional pain and anguish, and ultimately death.

50. As a direct and foreseeable result of Defendants' actions, Plaintiff has suffered damage including, but not limited to, emotional distress, mental anguish, as well as pain and suffering.

51. From Defendant Hinds County and QCHC, jointly and severally, Plaintiff seeks recovery of all compensatory damages to which the Estate of Cleveland Allison is entitled. Plaintiff further seeks recovery of punitive damages from QCHC and Doe Defendants named herein for the conduct in callous and reckless disregard for the rights, welfare and needs of the Decedent.

**DENIAL OF MEDICAL CARE**

52. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 51 hereinabove.

53. Defendants' failure to properly oversee and manage the Decedent's serious health condition directly caused his death. In doing so, Defendants violated clearly established constitutional rights, including but not limited to:

A) Cruel and unusual punishment under the Fourteenth Amendment;

B) Decedent's right not to be deprived of liberty without due process of law;

C) Decedent's right to be safe and protected from injury while in Defendants' custody;

and

D) Decedent's right to necessary medical treatment for his very serious medical condition.

54. By their failure to provide the Decedent with the medically necessary medications and care required to sustain his life, Defendants' actions deprived him of the rights secured for him by the United States Constitution under the Fourteenth Amendment and federal law.

55. As a direct and foreseeable result of Defendants' actions, Plaintiff has suffered damage including, but not limited to, emotional distress, mental anguish, as well as pain and suffering.

**NEGLIGENCE/GROSS NEGLIGENCE**

56. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 55 hereinabove.

57. At all times relevant herein, Defendant QCHC and its employees had a duty to exercise ordinary care for the inmates and pretrial detainees at HCDC, including the Decedent. QCHC and its employees breached that duty, by failing to use the ordinary care that a reasonable person would use to avoid and prevent injury to others, i.e., in the case *sub judice*, to provide the appropriate, reasonable and necessary medical care to accomplish same- the failure of which led directly to the incontrovertible permanent damage sustained by the decedent, Cleveland Allison. This breach was so egregious as to amount to gross negligence.

58. Cleveland Allison's death was the reasonably foreseeable outcome of QCHC's employees' acts and omissions. These acts and/or omissions were substantial factors in causing his death, and the accompanying damages suffered by the Plaintiff.

**MEDICAL MALPRACTICE**

59. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 58

hereinabove.

60. Defendant QCHC, by and through the individually named and Doe Defendants, was negligent and/or grossly negligent in failing to properly care for, diagnose and treat Decedent.

61. John and Jane Doe employees of QCHC were acting within the course and scope of their employment with QCHC. QCHC is liable for the acts and omissions of these individually named and Doe Defendants pursuant to the Mississippi Medical Malpractice Statute.

62. QCHC, by and through their Doe Defendants, breached their duties to Decedent by failing to properly diagnose and treat him, despite his ever-worsening medical symptoms, especially in light of his well-documented medical history, of which they were aware. QCHC's employees failed to exercise the degree of care, skill and learning expected of reasonably prudent heath care providers in the State of Mississippi acting in the same or similar circumstances. These Defendants committed medical malpractice under the law by failing to diagnose and treat Decedent. This medical malpractice directly and proximately resulted in the harms and damages alleged herein.

## NEGLIGENT HIRING AND SUPERVISION

63. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 62 hereinabove.

64. Plaintiff alleges Defendant QCHC and Doe Defendants 1-100 negligently hired, supervised, and retained its employees and agents, inter alia, by 1) failing to properly care for and ensure the Decedent's health, safety and well-being while incarcerated at HCDC; b) properly train, supervise, discipline, retain, hire and/or discharge its employees, agents, and/or representatives; and c) were otherwise negligent in their care and treatment of the Decedent, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RATIFICATION

65. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 64 hereinabove.

66. Hinds County, its policymakers and the Doe Defendants 1-100 were advised about the Hinds County incident involving the Decedent. Hinds County, by and through its policymakers, ignored evidence of widespread disregard of policies and procedures intended for the protection of inmates and pretrial detainees including the Decedent, and systemic deficiencies that violated the Decedent's constitutional rights. Based on information and belief, not one officer, supervisor, or any other person was retrained on policies intended for the protection of inmates. Instead, the policymakers approved the actions of the jailers and therefore ratified those actions.

67. Through these acts and omissions of ratification, Hinds County's policymakers were deliberately indifferent to the Decedent's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Hinds County ratified its employees' conduct and is therefore liable for the Decedent's death.

## PUNITIVE DAMAGES

68. The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 67 hereinabove.

69. Defendant QCHC and Doe Defendants 1-100's employees, in their individual

capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner as previously described herein. The actions of these Defendants warrant punitive damages.

70. The Defendants' actions in their individual capacities exhibited gross negligence and direct disregard for the safety of the Decedent. Punitive damages should be awarded against the Defendants. Defendants' tortious actions caused the wrongful death of the Decedent, and therefore, Plaintiff's emotional distress and mental anguish.

## PRAYER FOR RELIEF

The Plaintiff, Penisha McCullom, requests that upon a jury trial of this cause, the Court will award all relief due Plaintiff as set forth herein, including but not limited to the following:

A. Order that the Defendants pay Plaintiff all damages allowed under Mississippi's Wrongful Death statute and caselaw;

B. Order that the Defendants pay to Plaintiff a sum in punitive damages sufficient to deter these Defendants and others similarly situated from like conduct in the future;

C. Payment of medical and burial expenses;

D. Order the Defendants to pay Plaintiff's costs and expenses, including expert witness fees and reasonable attorney's fees, and prejudgment interest on all amounts found due and owing, including, but not limited to, those attorney's fees found properly awardable pursuant to 42 U.S.C. § 1988(b); and Grant such other general and special relief, of either an equitable or legal nature, to the Plaintiff as the Court deems just and proper.

RESPECTFULLY SUBMITTED, THIS the 9th day of December, 2025.

PENISHA MCCULLOM, PLAINTIFF,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE ON BEHALF OF THE
WRONGFUL DEATH BENEFICIARIES OF
CLEVELAND ALLISON

BY: /s/ ______________________________
Aafram Y. Sellers, MSB #100261
Attorney for Plaintiff

OF COUNSEL:

Aafram Y. Sellers, MSB #100261
SELLERS & ASSOCIATES, PLLC
395 Edgewood Terrace Drive
Jackson, Mississippi 39206
Tel: (601)352-0102
Facsimile: (601)956-6719
aafram@sellerslawfirm.net

Vicki L. Gilliam
The Gilliam Firm, PLC
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel: 601-488-4044
gilliam@gilliamfirm.com

William G. Shields (MSB# 104637)
Mack Reeves (MSB#104823)
SHIELDS REEVES, PLLC
PO Box 1648
Ridgeland, Mississippi 39158-1648
Telephone No. (601) 427-9196
garrig@shieldsreeves.com
mack@shieldsreeves.com
Counsel for Plaintiff

**CERTIFICATE OF CONSULTATION**

The undersigned attorney has reviewed the facts of this case and has consulted with at least one (1) expert, pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, who is qualified to give expert testimony as to a standard of care or negligence and whom the undersigned attorney reasonably believes is knowledgeable in the relevant issues involved. The undersigned attorney has concluded on this basis for the commencement of such action.

BY: /s/
Aafram Y. Sellers